# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| SOLOMON COLEY, ET AL. | CIVIL ACTION NO. 5:17-CV-01553 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHAD BOYETT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiffs Solomon Coley ("Coley) and Arshakne Hall ("Hall"), individually and on behalf of their minor children JC and AC,[1] bring this action under 42 U.S.C. § 1983 and Louisiana law to recover damages relating to the alleged excessive use of force by officers of the Bossier City Police Department. Now pending before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). [Record Document 41]. Plaintiffs have opposed the instant motion, Defendants have filed a reply, and Plaintiffs have filed a sur-reply. [Record Documents 45, 49, and 53]. For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. All federal claims against Defendants, Officer Chad Boyett ("Boyett") in his official and individual capacity, Sergeant Matthew Faulkner ("Faulkner") in his official and individual capacity, and the City of Bossier City, are hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' state law claims for excessive force and battery are **DISMISSED WITH PREJUDICE**. Summary judgment is **DENIED** as to Plaintiffs' negligence claim against the City of Bossier City for failure to train

---

[1] Because the children are minors, the Court will refer to them only as JC and AC. *See* Western District of Louisiana Local Rule 5.7.12(b).

1

and as to Plaintiffs' negligence claims against Boyett and Faulkner. Because the parties do not directly address the claim, the Court makes no ruling as to Hall and Coley's claims for "loss of consortium, love, service and society due to injuries to their children." [Record Document 19 at 8].

## BACKGROUND

On the night of April 1, 2017, Coley and his daughters, JC and AC, were at the Stone Vista Apartments in Shreveport, Louisiana where they were visiting with a friend. [Record Document 41-10 at 49]. When it was dark outside, JC, AC, and Coley intended to walk a few blocks to a house where the girls lived with their mother, Hall. [Record Document 41-10 at 49-50] As they were preparing to leave the apartment building, Coley halted the girls because he heard police sirens and observed a white Honda and police cars driving past. [Record Document 41-10 at 50]. Coley then observed the line of vehicles continue until they passed the Stone Vista complex. [Record Document 41-10 at 50-51].

What Coley witnessed was a police chase that began earlier that night in Bossier City, Louisiana. [Record Document 41-9 at 10-11]. Bossier City police officers pursued the vehicle in a chase that crossed the Texas Street Bridge from Bossier City to Shreveport, Louisiana. [Record Document 41-9 at 12]. As the chase proceeded onto Interstate 49, Officer Chad Boyett of the Bossier City Police Department led the chase because, per the Bossier City "General Orders," the officer with a canine takes the lead in a pursuit when possible, and Officer Boyett had canine Torres ("Torres") in his vehicle that night. [Record Documents 41-5 at 21:25, 41-9 at 12-14, and 41-11 at 6, 53].

The car chase continued through Shreveport, eventually passing the Stone Vista Apartments complex, where Coley had first noticed the procession. [Record Documents 1 at 3, 41-5 at 21:35-21:36]. The white Honda then continued driving past the apartments before circling back to the Stone Vista Apartments where it entered one of the complex parking lots, slowed to a roll, and two men fled from the vehicle. [Record Documents 41-6 at 21:37-21:38 and 41-11 at 19]. At this point, Boyett also exited his vehicle and let Torres out of the back seat. [Record Document 41-5 at 21:38]. Torres was not on a leash. [Record Documents 41-5 at 21:38 and 41-11 at 69]. One officer pursued the man who exited from the passenger side of the white Honda while Boyett and Torres pursued the suspect who exited from the driver's seat, Trevier Williams ("Williams"). [Record Documents 41-2 at 1, 41-5 at 21:38, 41-6 at 21:38, and 41-13 at 18].

Almost immediately after the pursuit began, Boyett gave Torres the command to apprehend Williams ("bite command"). [Record Document 41-11 at 82]. He did not give a verbal warning. [Record Document 41-11 at 85]. According to Boyett, he did not observe anybody outside except other police officers and the suspects. [Record Document 41-11 at 86-87]. When Boyett gave the bite command, Williams was still fully visible to Boyett. [Record Document 41-11 at 83]. Torres began running after Williams, eventually following him out of the complex and across a street where Torres "hit Williams and knock[ed] him to the ground in the grass."[2] [Record Document 41-11 at 83-84]. As Boyett observed Torres knocking Williams to the ground, he "was preparing to jump down from [a] retaining wall" located at

---

[2] Plaintiffs dispute the fact that Torres made contact with Williams. [Record Document 41-10 at 52]. Coley states that Williams fell because he hit a fence. [Record Document 41-10 at 79]. In any event, this fact is not material to any legal issue in this case.

the edge of the apartment complex but "lost [his] footing and fell face first basically in the concrete" and lost sight of Torres and Williams. [Record Document 41-11 at 84, 168]. While Boyett was standing up from the fall, a parked car blocked his view of Torres, Williams, JC, AC, and Coley, but he heard someone inside one of the Stone Vista apartments calling out that "the dog has the baby." [Record Document 41-11 at 84-85]. When he cleared the car blocking his view of the incident, Boyett observed Torres biting JC. [Record Document 41-11 at 98].

Coley alleges that before the bite, he observed Williams running towards him and his daughters with Torres trailing about fifteen or twenty feet behind. [Record Document 41-10 at 51-52]. Williams passed the group, but when Torres reached the trio, instead of continuing the pursuit of Williams, he "latches onto [JC]." [Record Document 41-10 at 52]. Coley, assuming that the police dog was trained to start "shaking" after latching onto someone, grabbed Torres and "put [him] in a headlock" and "held the dog still so it couldn't move his head nor body until [Coley] looked and [he] saw an officer come running out of the gate" in an effort to protect JC from further injury. [Record Documents 41-7 at 21:38 and 41-10 at 86-87].

There is dispute as to how long it took Boyett to get Torres to release his bite on JC. According to Boyett, he ran across the street, "grabbed his collar, called his name and gave him an out command, and he let go." [Record Document 41-11 at 98]. According to Coley, the officer approached them while the attack was still ongoing and was "tugging on the collar and saying something. The dog is not responding. . . .Whatever he was saying, he said it more than four times. . . . [Torres] didn't release within ten seconds." [Record Document 41-10 at

87-88]. Witness to the attack Keyaira Kimble estimated it took officers approximately five seconds to get Torres to release JC. [Record Document 45-14 at 6]. Another witness, Erica Proby, saw Boyett give Torres a command to release three times before making physical contact with Torres to make him release. [Record Document 45-10 at 10].

After Boyett got Torres to release JC, an ambulance arrived at the scene and JC was taken to the University Health emergency room where doctors examined her. [Record Documents 41-10 at 96-97 and 41-14 at 6]. Her exam revealed a puncture wound in her right upper abdomen and "multiple superficial linear abrasions" on the right side of her back. [Record Document 41-14 at 19]. She remained hospitalized overnight where doctors treated her with intravenous antibiotics. [Record Document 41-14 at 27-28]. The next morning, she was released with a prescription for ten more days of antibiotics. [Record Document 41-14 at 28, 32].

Plaintiffs filed the instant suit on November 29, 2017. [Record Document 1]. They allege that Defendants Boyett, Faulkner, and the City of Bossier City are liable under 42 U.S.C. § 1983 for constitutional violations. [Record Document 19]. Plaintiffs assert that Boyett is liable in his individual capacity for the use of excessive force under the Fourth Amendment and for Fourteenth Amendment substantive due process violations. [Record Document 19 at 1, 6]. Plaintiffs allege that the City of Bossier City is liable for failure to train its officers. [Record Document 19 at 7-8]. Plaintiffs assert that Faulkner is liable in his individual capacity for failure to intervene to stop Boyett's use of excessive force. [Record Document 19 at 4-5]. This claim stems from Faulkner's presence at the location of the attack. When Boyett and Torres began their pursuit of Williams on foot, Faulkner stayed in his vehicle and drove around

the complex, eventually intercepting Williams and Torres at almost the same time that Torres

began biting JC. [Record Documents 41-8 at 21:38 and 41-12 at 21:38]. Faulkner maintains

that he did not notice that Torres was biting JC and, as such, Faulkner parked his vehicle and

began chasing Williams on foot instead of intervening to stop the attack. [Record Documents

41-8 at 21:38 and 41-12 at 42-44].

Finally, Plaintiffs allege that Boyett is liable under Louisiana law for excessive use of

force and negligence. [Record Document 19 at 8-9]. They contend that the City of Bossier

City is liable in negligence for failure to properly train and supervise its officers. [Record

Document 19 at 8-9].

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings,

answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter

of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on

the non-moving party, the moving party need not produce evidence to negate the elements of

---

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## II.    Section 1983 Individual Capacity Claim

Plaintiffs allege that Boyett and Faulkner are liable in their individual capacities under 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights. [Record Document 19]. Defendants argue that they did not violate Plaintiffs' constitutional rights and, alternatively, that if there were constitutional violations, Boyett and Faulkner are qualifiedly immune from liability. [Record Document 41-1 at 11-15 and 19-28].

Title 42, United States Code, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To assert a claim for damages under this statute, a plaintiff must demonstrate (1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). If a plaintiff establishes a § 1983 violation, the state officer may still be qualifiedly immune from liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To overcome qualified immunity, a plaintiff must first establish that a constitutional violation occurred and, second, that the violation was of a clearly established right. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). If there is no constitutional violation, the officer is entitled to qualified immunity. *Id.* Thus the Court will first address whether Plaintiffs have established that Boyett or Faulkner violated any constitutional rights. *Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case at hand."). Because the Court finds that there are no constitutional violations for the reasons stated below, the Court's § 1983 and qualified immunity analysis ends there.

## A. Plaintiffs' Fourth Amendment Claim

Defendants argue that Plaintiffs' Fourth Amendment excessive force violation must fail as a matter of law because excessive force claims under the Fourth Amendment require an initial showing that a "seizure" occurred, and in this case, there was no "seizure" because Defendants did not intend for Torres to bite JC. [Record Document 41-1 at 5-6]. Plaintiffs contend that it is not necessary to show that Defendants intended that Torres bite JC, but only that Defendants intended to release Torres to bite someone and that they did so in an unreasonable manner. [Record Document 45 at 2-13].

To establish a Fourth Amendment violation, Plaintiffs must first establish that a "seizure" occurred. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). A seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). As the Fifth Circuit noted, "other circuits have typically concluded that 'where the seizure is directed appropriately at the suspect but inadvertently injures an innocent person, the innocent victim's injury or death is not a seizure that implicates the Fourth Amendment because the means of seizure were not deliberately applied to the victim.'" *Blair v. City of Dallas*, 666 F. App'x 337, 341 (5th Cir. 2016) (quoting *Milstead v. Kibler*, 243 F.3d 157, 163-64 (4th Cir. 2001)), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. at 235.

Under this standard, JC was not seized by Defendants. The undisputed facts are that Boyett and others engaged in a vehicular police chase. When the suspects exited the vehicle and fled on foot, Boyett released Torres to catch Williams. It was during that pursuit that Torres bit JC. There is a dispute as to whether Boyett knew or should have known that there were people in the area who would be at risk if he released Torres. This fact is not material to determining if there was a seizure, however, because the issue of seizure turns on intent, and Plaintiffs have presented no evidence that Boyett intended that Torres bite or otherwise seize JC when he released the canine. Torres was not "deliberately applied" to JC nor were JC's movements restricted "through means intentionally applied."

In support of their argument, Plaintiffs quote *Brendlin v. California* where the Supreme Court stated, "Thus, an 'unintended person … [may be] the object of the detention,' so long as the detention is 'willful' and not merely the consequence of 'an unknowing act.'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Brower*, 489 U.S. at 597). [Record Document 45 at 9-10]. They also cite *Stamps v. Framingham*, 813 F.3d 27 (1st Cir. 2016), to support the proposition that "inadvertent excessive force is [not] shielded from scrutiny under [the] Fourth Amendment to United States Constitution." [Record Document 45 at 10]. While both cases may seem applicable at first glance, closer inspection reveals why they are meaningfully different than the case at hand.

In *Brendlin*, the Supreme Court did state that an unintended person could be seized, but importantly followed that with the requirement that the seizure still needed to be willful and intentional. *Brendlin*, 551 U.S. at 254. Likewise, in *Stamps* the First Circuit did find that an officer's accidental firing of his weapon while detaining someone could constitute a seizure,

but significantly the inadvertent excessive force occurred during the course of the officer's intentional seizure of the man. *Stamps*, 813 F.3d at 35-36. While the application of the excessive force to Mr. Stamps was unintentional, it was a product of the officer's unreasonable behavior during an intentional seizure of Mr. Stamps. *Id.* at 32.

In this case, there is no evidence in the record that Boyett's willful act, releasing Torres, was intended to seize anyone other than Williams. Thus even if JC was an "unintended person" or the victim of inadvertent excessive force, the lack of intent to seize her at all means there can be no Fourth Amendment violation.

"The Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Brower*, 489 U.S. at 596 (internal citations omitted). Because Officer Boyett did not release Torres with the intent of stopping JC, the bite JC suffered was not the product of "means intentionally applied" and, therefore, was not a Fourth Amendment seizure. Plaintiffs' 42 U.S.C. § 1983 claim based on a Fourth Amendment violation is **DISMISSED WITH PREJUDICE**.

### B. Failure to Intervene

Plaintiffs assert that Faulkner is liable under 28 U.S.C. § 1983 for failure to intervene to stop Boyett's use of excessive force. [Record Documents 19 at 5 and 45 at 29-30]. Plaintiffs are correct that an officer who is present at the scene where excessive force is used and fails to intervene may be liable for a Fourth Amendment violation under § 1983, but "the presence of excessive force [is] essential to a failure to intervene § 1983 violation." *Spencer v. Rau*, 542 F. Supp. 2d 583, 594 (W.D. Tex. 2007). *See also Gilbert v. French*, 364 F. App'x 76, 83 (5th Cir.

2010). This Court found that there was no excessive force violation and, thus, Plaintiffs' §
1983 claim against Faulkner likewise fails and is **DISMISSED WITH PREJUDICE**.

### C. Plaintiffs' Fourteenth Amendment Claim

#### 1. Allowing Plaintiffs' Claim Under the Fourteenth Amendment

Plaintiffs also assert a standalone Fourteenth Amendment substantive due process
claim against Boyett. [Record Documents 19 at 1 and 45 at 24]. Defendants argue that
Plaintiffs' Fourteenth Amendment claim should be dismissed because the substantive due
process claim is based on excessive force, which must be adjudicated under the Fourth
Amendment because that is the most specific constitutional protection applicable. [Record
Document 41-1 at 14-15]. Plaintiffs respond that, in the event that the Court rules that they
do not have an actionable Fourth Amendment claim, then they do have a Fourteenth
Amendment claim. [Record Document 45 at 24].

First, the Court turns to whether Plaintiffs' claim should be considered under the
Fourteenth Amendment. When a "particular Amendment provides an explicit textual source
of constitutional protection against a particular sort of government behavior, that
Amendment, not the more generalized notion of substantive due process, must be the guide
for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)
(quoting *Graham*, 490 U.S. at 395) (internal quotation marks omitted). This does not mean that
"all constitutional claims relating to physically abusive government conduct must arise under
either the Fourth or Eighth Amendments[,]" but only that those claims which are "covered
by" the Fourth Amendment must be evaluated under Fourth Amendment standards. *Cty. of
Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272

n.7 (1997)) (internal quotation marks omitted). The Fourth Amendment only applies to searches and seizures. *Id.* Plaintiffs do not allege a search occurred in this case and the Court held that there was no seizure. Thus, the Fourth Amendment is not applicable, and the Court must address the merits of Plaintiffs' Fourteenth Amendment claim. *Id.* at 843-44.

## 2. **The Merits of Plaintiffs' Fourteenth Amendment Claim**

Defendants argue that Plaintiffs' Fourteenth Amendment claim should be dismissed on the merits because Plaintiffs have not met their burden of establishing that there is a triable issue of fact. [Record Document 49 at 11]. Plaintiffs assert that the evidence presented thus far is sufficient to establish that Defendants' actions rise to the level of a substantive due process violation. [Record Document 45 at 24-25].

The Fourteenth Amendment protects individuals against deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. This is both a substantive and a procedural protection. *Cty. of Sacramento*, 523 U.S. at 840. The "core concept" behind the term "due process" is the "protection against arbitrary action." *Id.* at 845. To establish a substantive due process claim based on executive action, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense[.]'" *Id.* at 846 (quoting *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 129 (1992)). The "cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* Conduct amounting to mere negligence is "categorically beneath the threshold of constitutional due process." *Id.* at 849. Recognizing the difficulties police officers face when engaged in pursuit of a fleeing suspect, the Supreme Court held that "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience" in that

context and noted that "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock" that rises to the level of a Fourteenth Amendment violation. *Id.* at 836, 853.

Plaintiffs enumerate several of Boyett's actions that they believe constitute a Fourteenth Amendment violation. The Court will address each individually. First, Plaintiffs argue that Boyett's decision to release Torres when he either knew or should have known there would be people present "shocks the conscience." [Record Document 45 at 23-24]. Under the *County of Sacramento* standard, Boyett's knowledge of others at the scene is immaterial.[4] When Torres was released, the officers were engaged in the chase of suspects the police believed to be armed. [Record Documents 41-11 at 85 and 41-12 at 55]. There is no evidence in the record to suggest that Torres was released for any purpose other than to catch Williams, and certainly no evidence to prove an intent to cause harm that was unrelated to the legitimate object of arrest. To the extent that Plaintiffs argue Boyett was negligent in failing to look for the presence of others, this too fails to rise to a substantive due process violation.

Relatedly, Plaintiffs assert that Boyett's failure to give a verbal warning when releasing Torres rises to the level of a Fourteenth Amendment violation. [Record Document 45 at 24]. Boyett admits that, "dependent on the situation," a canine handler should give a verbal warning before giving a bite command. [Record Document 41-11 at 70]. He also admits that

---

[4] Plaintiffs dispute Boyett's assertion that he did not know any other people were outside at the time. [Record Document 45 at 21-22]. Boyett was wearing a body camera that night, but the footage has not been recovered. [Record Document 41-11 at 47-52]. Plaintiffs argue that because of this, the spoliation doctrine applies, and the Court should presume that the footage would reveal the presence of civilians outside the complex. [Record Document 45 at 21-22]. Because the officer's knowledge of other people is not a material fact in the analysis, the Court makes no ruling as to the application of spoliation.

the Bossier City Police Department "General Orders" require that officers give a verbal warning. [*Id.*] Boyett acknowledges that he did not give a warning when releasing Torres that night, but says that decision was based on a fear for officer safety because he had reason to believe Williams was armed and the warning may have caused Williams to begin shooting. [Record Document 41-11 at 85]. Plaintiffs present no evidence that Boyett failed to give a warning with the intent to cause harm unrelated to his stated reason, which is related to the legitimate object of his arrest. Hence Boyett's omission does not rise to the level of shocking the conscience.

Plaintiffs next argue that Boyett's decision to use the "choke off" release technique instead of verbally commanding Torres to release his bite on JC shocks the conscience because it exacerbated her injuries. [Record Document 45 at 24-25]. Plaintiffs cite expert Kyle Heyen's ("Heyen") explanation that the use of a "choke off" increased JC's pain and injuries because this technique causes the dog to first increase the intensity of the bite before releasing.[5] [Record Documents 41-18 at 11-13 and 45 at 25]. Heyen states that there are only three reasons a canine handler would use a "choke off" maneuver instead of a verbal command: (1) the handler has reason to believe the dog will not release by a verbal command alone; (2) the handler was improperly trained; or (3) the handler "knowingly and maliciously wants to inflict more pain." [Record Document 41-18 at 12-13]. Heyen noted that the use of a "choke off" release does not meet the "current patrol dog standards in the United States." [Record Document 41-18 at 13]. Boyett explained that he chose to use a combination of the "choke

---

[5] Defendants objected to Plaintiffs' submission of the "Addendum" to the Expert Report of Kyle Heyen. [Record Documents 45-5 and 49 at 10]. The Court did not need to rely on this report, and therefore makes no ruling on Defendants' objection.

off" and an "out command" because he worried that had he just given an "out command," Torres would have released his bite on JC and instantly turned to attack Coley because Coley was holding and hitting the dog while trying to help JC. [Record Document 41-11 at 99-100].

At the time this incident occurred, Boyett was in pursuit of a fleeing suspect. He was forced to make the very type of split-second decision that the Supreme Court considered when holding that officers engaged in high speed chases were not liable under the Fourteenth Amendment absent evidence that the officer intended to harm the suspect or worsen his legal plight. *Cty. Of Sacramento*, 523 U.S. at 853-854. Boyett was forced to make an instant decision about how best to get Torres to release JC without causing Torres to turn his attack on another person, as Boyett knew was likely to happen in that situation. Given this, the Court cannot conclude that Boyett's decision to use a "choke off" release shocks the conscience. While this technique very well may have exacerbated JC's injuries, and possibly was not the best way to have handled the situation, there is no evidence that Boyett made that decision with the intent to cause JC more harm. At most his decision was negligent or showed precipitate recklessness, but this does not rise to the level of a Fourteenth Amendment violation.

Plaintiffs have failed to identify any actions or decisions which rise to the level of shocking the conscience, and therefore have failed to establish that Defendants violated their Fourteenth Amendment rights. Thus, Plaintiffs' 42 U.S.C. § 1983 claim based on a Fourteenth Amendment violation is **DISMISSED WITH PREJUDICE**.

### III. Official Capacity Claims Against Officer Boyett and Sergeant Faulkner

Plaintiffs assert that Boyett and Faulkner are liable in both their individual and official capacities. [Record Document 19 at 2]. An official capacity suit against a municipal officer

duplicates a suit against the officer's municipality. *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A district court faced with both claims may dismiss the official capacity claim. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citing *Flores v. Cameron Cty.*, 92 F.3d 258, 261 (5th Cir. 1996)). The official capacity claims against Boyett and Faulkner are **DISMISSED WITH PREJUDICE** as duplicative of the municipal liability claims against the City of Bossier City.

## IV.    Section 1983 Municipal Liability Claim

Plaintiffs assert that the City of Bossier City is liable under 42 U.S.C. § 1983 for failure to properly train Boyett and Torres. [Record Document 19 at 7-8]. The Supreme Court has held that municipalities such as the City are "persons" within the meaning of § 1983, and are therefore subject to potential liability under the statute. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality is only responsible for a constitutional harm if the execution of one its customs or policies caused, or was the "moving force" of, the injury. *Id.* at 694.

To impose liability on a municipality under § 1983, a plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). In the instant case, Plaintiffs have failed to establish a violation of any constitutional right, and therefore their claim against the City of Bossier City is **DISMISSED WITH PREJUDICE**.

## V.    Plaintiffs' State Law Claims

Having dismissed all of Plaintiffs' federal claims, the Court must address jurisdiction over the remaining state law claims. When a federal court has jurisdiction over a claim, it can

also hear any claims over which it has supplemental jurisdiction. 28 U.S.C. § 1367. If the claims initially conveying jurisdiction upon the federal court are dismissed for reasons other than a lack of jurisdiction, the court has discretion to continue exercising jurisdiction over the supplemental claims. 28 U.S.C. § 1367(c). *See also Baker v. Farmers Elec. Coop.*, 34 F.3d 274, 283 (5th Cir. 1994) ("The pendent jurisdiction may continue even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot.").

Although the federal claims have now been dismissed, the Court exercises its discretion to retain jurisdiction over Plaintiffs' state law claims.

## A. <u>Battery and Excessive Force</u>

Plaintiffs argue that Boyett is liable under Louisiana Civil Code Article 2315 for "battery committed against [JC]" under the theory that when an officer uses excessive force, what is normally a protected use of force is converted to a battery. [Record Document 45 at 30-31]. Under Louisiana law, a police officer has the right to use force when effectuating a lawful arrest. *Deville v. Marcantel*, 567 F.3d 156, 173 n.9 (5th Cir. 2009) (citing La. Code. Crim. P. art 220). "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages." *Penn v. St. Tammany Par. Sheriff's Office*, 02-0893 (La. App. 1 Cir. 4/2/03); 843 So. 2d 1157, 1161. "A battery is '[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . . .'" *Landry v. Bellanger*, 02-1443 (La. 5/20/03); 851 So. 2d 943, 949 (quoting *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). Under Louisiana law, there was no battery here because battery is the intentional application of force and Boyett did not intend

to apply force to JC by releasing Torres to attack. Therefore, Plaintiffs' state law excessive force claim is **DISMISSED WITH PREJUDICE.**

### B. Strict Liability

#### 1. Plaintiffs' Right to Raise Strict Liability

Plaintiffs allege that the City of Bossier City is strictly liable for the damage inflicted by Torres under Louisiana Civil Code Article 2321. [Record Document 45 at 31]. Plaintiffs first formally stated a claim for strict liability in their opposition to Defendants' motion for summary judgment. [*Id.*] Defendants argue that the Court should not consider this argument because it was raised at a "highly improper" time. [Record Document 49 at 9]. Plaintiffs contend that the Court should consider this claim because it is not a "new" claim. [Record Document 53 at 2]. They further argue that should the Court find this is a new claim, the Court must construe it as a motion to amend the Plaintiffs' complaint. [*Id.*]

When a claim is raised for the first time in response to a motion for summary judgment, a court should treat the claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a). *Riley v. School Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008)). "The Supreme Court lists five considerations in determining whether to deny leave to amend a complaint: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment . . . .'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). When these factors are absent, leave should be "freely given." *Id.*

In this case, Plaintiffs have already filed an amended complaint that failed to expressly raise strict liability. [Record Document 19]. This fact alone does not mean they should not be granted leave to amend their complaint to now add the strict liability claim, though. *See Rosenzweig*, 332 F.3d at 864 ("Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant.") (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)). The other factors the Court must consider all lead the Court to allowing Plaintiffs to amend the complaint. First, allowing Plaintiffs' strict liability claim to go forward will not cause any undue delays or undue prejudice to Defendants as the facts relevant to the strict liability claim are the same facts that are relevant to the negligence claims properly raised in Plaintiffs' complaint. Second, there is no evidence that strict liability was raised in bad faith or with a dilatory motive. Third, amending the pleading to raise strict liability is not futile.

Having concluded that it is in the interest of justice to allow Plaintiffs to amend their complaint to raise a strict liability claim, the Court will allow until **October 31, 2019** for Plaintiffs to file an amended complaint.

### C. Negligence Against the City of Bossier City

Plaintiffs allege that the City of Bossier City is liable in negligence for failure to train and supervise Boyett "in tactics concerning the use and handling of a K-9 dog under these kinds of circumstances including the presence of innocent bystanders." [Record Document 19 at 9]. Defendants contend that Bossier City is entitled to discretionary acts immunity under Louisiana Revised Statute § 9:2798.1. [Record Document 41-1 at 25].

Louisiana Revised Statute § 9:2798.1(B) provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." The statute defines "public entity" to include the state and any of its branches and political subdivisions and the departments, offices, and agencies of such political subdivisions. La. Rev. Stat. § 9:2798.1(A). *See also Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (applying La. Rev. Stat. § 9:2798.1 to claims of negligent training against a city police chief). This immunity is not absolute, however. "The Supreme Court of Louisiana considers the immunity conferred on state public officials by this law to be 'essentially the same as the immunity conferred on the federal government by the exception to the Federal Tort Claims Act (FTCA).'" *Id.* (quoting *Jackson v. State ex rel. the Dep't of Corrections*, 00-2882 (La. 5/15/01); 785 So. 2d 803, 809). The City of Bossier City is only immune, then, if "no state law, regulation, or policy specifically" proscribed "the officer's course of action" and if "the challenged action is grounded in political, economic, or social policy." *Id.* Simply put, if the official exercised "policy-based discretion," he or she is immune from state tort liability. *Id.*

In this case, the parties have provided information about and discussed the training in which Boyett and Torres participated but have not established that the initial training, the ongoing training, or the supervision of Boyett was "grounded in political, economic or social policy." Defendants have thus failed to establish that the City of Bossier City is entitled to immunity under § 9:2798.1(B).

Likewise, Defendants have failed to carry their summary judgment burden on the merits of Plaintiffs' negligence claim. In support of their argument, Defendants assert that "Plaintiffs have no evidence showing that Bossier City failed to adequately train or supervise Officer Boyett on the use of police dogs." [Record Document 41-1 at 25]. They then argue that the summary judgment evidence demonstrates that "Officer Boyett received all necessary and appropriate police dog training." [*Id.*] These are conclusory allegations for which no record evidence or binding authority was cited.

The Court recognizes that Defendants addressed the training Boyett received with Torres in another section of their brief. [Record Document 41-1 at 17]. In this section, Defendants establish that Boyett "completed a twelve-week handler course, passed written tests, and completed a two-week field training phase" with Torres. [*Id.*]. They also cite evidence that Boyett was National Police Canine Association ("NPCA") certified in 2016 and that NPCA training is the "best practice standard in the police dog industry." [*Id.*] While these facts are illuminating, they have not been addressed in the context of the Plaintiffs' negligence claim. Accordingly, summary judgment is **DENIED**.

### D. <u>Negligence Against Officer Boyett and Sergeant Faulkner</u>

Plaintiffs allege that Boyett was negligent in deploying Torres and that Faulkner was negligent in failing to intervene to stop the attack. [Record Documents 19 at 8-9 and 45 at 33]. Defendants argue that Plaintiffs cannot satisfy all elements of a negligence claim because they cannot show that Boyett and Faulkner breached any duty by acting unreasonably. [Record Document 41-1 at 26-27]. The briefing submitted by the parties failed to address whether Boyett or Faulkner owed a duty to JC, AC, and Coley under the circumstances of this case.

Furthermore, questions of material fact remain that are relevant to determining the reasonableness of Boyett and Faulkner's actions. Summary judgment on these claims is therefore **DENIED**.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [Record Document 41] is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to all of Plaintiffs' federal claims and Plaintiffs' state law excessive force claim. It is **DENIED** as to Plaintiffs' negligence claim against the City of Bossier City and their negligence claims against Boyett and Faulkner. Plaintiffs shall have until **October 31, 2019** to file their amended complaint including their strict liability claim.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this _____ day of October, 2019.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE